IN THE CHANCERY COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

| | |
|---|---|
| FOR SENIOR HELP, LLC, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. _____ |
| | ) |
| WESTCHESTER FIRE | )   JURY DEMAND |
| INSURANCE COMPANY, | ) |
| | ) |
|     Defendant. | ) |

_____

**COMPLAINT**
_____

Comes the Plaintiff, For Senior Help, LLC, by and through counsel, and for complaint against the Defendant, Westchester Fire Insurance Company states as follows:

## I. PARTIES, JURISDICTION & VENUE

1. Plaintiff, For Senior Help, LLC ("FSH") is a Tennessee limited liability company with its principal place of business in Shelby County, Tennessee.

2. Defendant, Westchester Fire Insurance Company ("Westchester") is a Pennsylvania corporation

3. This action arises from an insurance contract executed partially in Davidson County, Tennessee and is based on actions that occurred in Davidson County, Tennessee. The parties are citizens of different states, and the amount in controversy exceeds $75,000. This court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. FACTS

4. On May 27, 2015, Westchester delivered an ACE Advantage Miscellaneous Professional Liability Policy to Medex Patient Transport Services, LLC ("Medex"). A copy of the Policy is attached as <u>Exhibit 1</u>.

5. The Policy has limits of liability of $1,000,000 per claim and $1,000,000 aggregate.

6. By an Order dated November 19, 2018, the United States Bankruptcy Court for the Middle District of Tennessee assigned the Policy and all claims under the Policy to FSH. A copy of this Order is attached as <u>Exhibit 2</u>.

7. The Policy contains a Franchisors Endorsement, which provided coverage for the following acts, *inter alia*:

>   (a) the failure to comply with any federal or state law or regulation, or the terms of the Franchise Contract, affecting the renewal or termination of the relationship of the parties to a Franchise Contract; and
>
>   (b) the failure of the franchisor to provide services, training, advertising, or other support to the franchisee as required under the terms of a Franchise Contract or disclose to franchisees in an offering circular or other distributed disclosure document.

8. The Franchisors Endorsement defines a "Franchise Contract" as "any franchise agreement, area agreement or development agreement."

9. FSH was a Medex franchisee. FSH and Medex entered into a franchise agreement on February 27, 2015 (the "Franchise Agreement"). A copy of the Franchise Agreement is attached as <u>Exhibit 3</u>. The Franchise Agreement is a "Franchise Contract" as defined by the Policy.

2

10. At the same time that the Franchise Agreement was executed, FSH also took an assignment of an area developer agreement with Medex. (the "ADA"). Under the Area Developer Agreement, FSH was to be paid in exchange for soliciting, qualifying, training and assisting Medex franchisees within an exclusive territory. A copy of the ADA is attached as <u>Exhibit 4</u>. The ADA is a "Franchise Contract" as defined by the Policy.

11. Under the terms of the Franchise Agreement, Medex was obligated to provide certain services to FSH. Included among these services were the operation of a centralized service center to provide to FSH: (a) call center; (b) centralized dispatch, (c) route management, (d) certain office functions, (e) reporting invoices to Franchisee, and (f) route efficiency planning and the mapping of trouble spots (the "Operations Services").

12. Both the Franchise Agreement and the ADA include provisions that allow the prevailing party in any legal dispute regarding the contracts to recover attorneys fees and expenses.

13. On May 25, 2016 Medex terminated both the Franchise Agreement and the ADA.

14. On May 26, 2016, FSH filed a lawsuit against Medex in the Chancery Court for Davidson County, Tennessee (the "Chancery Lawsuit"). The Chancery Lawsuit alleged that Medex had breached the Franchise Agreement by failing to adequately provide Operations Services and had wrongfully terminated the ADA. also asserted claims for fraud, consumer protection, and recession.

15. Upon receiving the Complaint in the Chancery Lawsuit, Medex timely filed a claim with Westchester. Westchester agreed to provide a defense for the claims asserted

3

in the Chancery Lawsuit, with a reservation of the rights to refuse to pay a judgment that was awarded for conduct not covered by the Policy.

16. Medex filed counterclaims in the Chancery Lawsuit and ultimately filed a Motion to Stay the Chancery Lawsuit and refer the dispute to arbitration pursuant to an arbitration provision in the Franchise Agreement. The Chancery Court granted this Motion.

17. On March 8, 2017, FSH filed an arbitration demand against Medex, Klein Calvert, Kyle Calvert, and KR Calvert Co., LLC.

18. Westchester continued to provide a defense to Medex throughout the course of the arbitration.

19. In the Arbitration Statement of Claim, FSH asserted claims against Medex for: (a) breach of the Franchise Agreement for failing to adequately provide operations services; (b) breach of the Franchise Agreement by terminating it without cause; and (c) breach of the ADA by terminating it without cause. FSH also brought claims for fraud in the inducement, intentional misrepresentation, and consumer protection. The claims against KR Calvert Co., LLC were ultimately dismissed.

20. The arbitration was scheduled to occur on October 24-27, 2017. The parties decided to spend the first scheduled day of the arbitration in an effort to settle the claims. FSH offered to settle all of the claims against Medex in exchange for payment of $250,00, well below the liability limits of the Policy. Westchester offered $25,000 in response and never made any serious offer to settle the claims. The parties therefore proceeded to conduct the arbitration.

4

21. On January 8, 2018, the Arbitrator issued his Final Award, a copy of which is attached as Exhibit 5. The Arbitrator ruled in favor of FSH on every claim that was presented to him. The arbitrator also awarded attorneys fees and the arbitration costs to FSH. The Arbitrator awarded the following damages:

    a. Against Medex Patient Transport Services, LLC for breach of contract:

| | |
|---|---|
| Medex Breach of Franchise Agreement | $120,461.00 |
| Medex Breach of ADA | $452,065.00 |
| Total | $572,526.00 |

    b. Against Medex Patient Transport Services, LLC, Kyle Calvert, and Klein Calvert, jointly and severally, for fraud, misrepresentation by concealment, and violation of the TCPA:

| | |
|---|---|
| Medex, Klein & Kyle Misrepr | $613,702.00 |
| Medex, Klein & Kyle Fraud | $613,702.00 |
| Medex, Klein & Kyle TCPA | $613,702.00 |
| Total | $613,702.00[1] |

    c. Against Medex Patient Transport Services, LLC, Kyle Calvert, and Klein Calvert, jointly and severally for attorneys fees and expenses:

        $244,717.00

    d. Against Medex Patient Transpo11 Services, LLC, Kyle Calvert, and Klein Calvert, jointly and severally for arbitration fees and costs: $34,200.01

---

[1] The fraud, misrepresentation, and TCPA claims involved the same conduct, and the damages are therefore not cumulative.

22. The arbitration award was ultimately confirmed by the Chancery Court for Davidson County, Tennessee and converted a judgment by the Order attached as Exhibit 6 (the "Judgment")

23. The portions of the Judgment representing awards for the claims for breach of the Franchise Agreement, breach of the ADA, attorneys fees and expenses, and arbitration fees and costs are all covered by the Policy.

24. Subsequent to the arbitration award, Medex made demand upon Westchester, through Chubb, the administrator of the Policy, to pay the Judgment.

25. By letter dated February 8, 2018, a copy of which is attached as Exhibit 7 (the "Denial Letter"), Westchester, through Chubb North American Claims, informed Medex that it was denying coverage for any portion of the Judgment.

26. The Denial Letter falsely states that "[t]he award of damages, attorney's fees and arbitration costs to FSH was based on the Arbitrator findings that Medex fraudulently induced FSH into entering into the Franchise Agreement and Area Developer Agreement ("ADA") and *awarded all damages to FSH on this basis*. Based on this knowingly false assertion, Westchester denied the claim on the basis of the Policy language that "there is no coverage for any Claim alleging, based upon, arising out of, or attributable to any dishonest, fraudulent, criminal or malicious act or omission, or any intentional or knowing violation of the law by an Insured."

27. As the Arbitrator's award makes plain, the damages for breach of the Franchise Agreement and for breach of the ADA are not based on fraudulent inducement or fraud of any kind. The damages awarded for breach of the Franchise Agreement were

6

for the failure to adequately provide the Operations Services. The damages for breach of the ADA were for the wrongful termination of the ADA. Neither of these causes of action contain fraud or intent as an element, and the arbitrator made no finding of fraud or intent with respect to these claims.

28. Similarly, the award of attorneys fees and damages was based on a number of things, including the fee provisions in the contracts and the arbitration rules. No fraud or intent was necessary to establish an award of fees and expenses.

29. According to the Denial Letter, Westchester also denied the claim because "all Wrongful Acts forming the basis of the award took place prior to the Retroactive Date of the Policy," which was May 27, 2015. This also a knowingly false statement. The overwhelming number of acts that constituted breach of the Franchise Agreement occurred well after May 27, 2015. The acts that constituted breach of the ADA did not occur until May 2016.

30. Westchester also denied coverage based on Kyle Calvert's failure to disclose his Chapter 7 bankruptcy. Mr. Calvert's failure to disclose the bankruptcy had nothing to do with the claims for breach of the Franchise Agreement or the ADA.

31. Westchester also denied coverage based upon an exclusion in the Franchisor's Endorsement excluding coverage for claims:

> alleging, based upon, arising out of or attributable to the recovery by a franchisee of actual sums paid to the Insured by a franchisee which constitute any initial fees, service fees. royalties, lease payments, or payments for goods and services

7

32. FSH did not seek a refund of the franchise fee. Rather FSH's damages for breach of the Franchise Agreement were limited to the amount of the franchise fee. This damages limitation provision does not remove coverage for damages for breach of the Franchise Agreement for failure to provide Operations Services. At best, there two conflicting provisions, which must be construed against Westchester.

## II. CAUSES OF ACTION

### COUNT ONE

### BREACH OF CONTRACT

33. Plaintiff incorporates all preceding allegations.

34. The Policy was a binding contract between Medex and Westchester.

35. Westchester breached the contract by failing to pay the judgment against Medex for breach of contract and attorneys fees.

36. Medex has suffered damages as a result of Westchester's breach.

### COUNT TWO

### BAD FAITH PURSUANT TO TENN. CODE ANN. § 56-7-105

37. Plaintiff incorporates all preceding allegations.

38. Westchester's refusal to pay the claim was not in good faith, and as a result of such refusal, Medex incurred substantial costs.

39. Plaintiff is entitled to the statutory penalty set forth in Tenn. Code Ann. § 56-7-105.

## COUNT THREE

## BAD-FAITH FAILURE TO SETTLE WITHIN POLICY LIMITS

40. Plaintiff incorporates all preceding allegations.

41. Westchester's refusal to settle the FSH case within policy limits was a result of Westchester's disregard or demonstrable indifference toward the interests of its insured.

42. As a result of Westchester's failure to settle within policy limits, incurred a judgment for far in excess of those policy limits.

43. Plaintiff is entitled to a judgment against Westchester in an amount equal to the difference between any amounts that Westchester is required to pay under the Policy and the amount of the FSH Judgment.

## III. PRAYER FOR RELIEF

Premises considered, Plaintiff respectfully requests the Court to grant it the following relief:

a. Empanel a jury of six to hear the issues joined by the pleadings.

b. Award Plaintiff a judgment in an amount to be determined at trial, but not less than $851,443.01.

c. Award Plaintiff pre-judgment interest; and

d. Award Plaintiff what further relief to which it is entitled in the premises.

Respectfully submitted:

/s/ Greg Oakley
Gregory H. Oakley, BPR #16237
104 Woodmont Boulevard, Suite 201
Nashville, Tennessee 37205
(615) 209-9814
goakley@oakley-law.com