# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| FOR SENIOR HELP, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 3:19-cv-00126 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| WESTCHESTER FIRE INSURANCE ) | MAGISTRATE JUDGE HOLMES |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court Defendant's Motion for Summary Judgment (Doc. No. 15). Plaintiff filed a Response (Doc. No. 19) and Defendant filed a Reply (Doc. No. 23). In Support of the Motion, Defendant filed a Statement of Undisputed Material Facts (Doc. No. 15-12), to which Plaintiff responded (Doc. No. 21).[1]

For the reasons discussed below, Defendant's Motion for Summary Judgment (Doc. No. 15) is **DENIED**.

## I. BACKGROUND

The case arises out of dispute over insurance coverage. Plaintiff For Senior Help, LLC ("FSH") alleges Defendant Westchester Fire Insurance Co. ("Westchester") wrongfully denied insurance coverage for an arbitration award in favor of FSH. FSH bring claims for breach of

---

[1] On March 16, 2020, Plaintiff filed a Motion for Partial Summary Judgment (Doc. No. 26) and Statement of Undisputed Material Facts (Doc. No. 27). Defendant has not yet responded to Plaintiff's motion. As Plaintiff's motion is not fully briefed, the Court now considers only Defendant's Motion for Summary Judgment (Doc. No. 15).

the insurance contract, bad faith refusal to pay, and bad faith failure to settle within policy limits. (Compl., Doc. No. 1).

The following facts are taken from Defendant's Statement of Undisputed Material Facts as responded to by Plaintiff (Doc. No. 21), and the Final Award issued by the American Arbitration Association (Doc. No. 1-5).

**A. The Underlying Claim**

On February 27, 2015, FSH entered into a franchise agreement with Medex Patient Transport Services, LLC ("Medex"),[2] a franchisor for the operation of businesses that provide non-emergency transportation and related patient-care services. FSH paid Medex a franchise fee of $78,363.15 and an additional $70,000 for an Area Developer Agreement ("ADA"). The ADA gave FSH the right to solicit, qualify, train, and assist other franchises within an exclusive territory and to receive a percentage of royalties paid by franchises within the covered area.

Pursuant to the franchise agreement, FSH paid Medex a 10% operations fee for "Outsourced Operations Support," which including call center support, centralized dispatch, route management, certain office functions, and billing. Medex did not provide the operations support as required by the contract and FSH began providing some of its own operations support functions. On April 6, 2016, FSH sent Medex a formal notice of its material breaches of the franchise agreement. Medex responded by terminating the franchise agreement and the ADA on May 25, 2016. As reason for the termination, Medex alleged FSH materially breached the

---

[2] Medex also operated under the tradename "Caliber."

franchise agreement by, among other things, providing its own call center intake, dispatch, and route management. Medex also claimed FHS misused its trademark by creating "unauthorized return call cards." (*See* Notice of Termination, Doc. No. 19-1). The same day it received the notice of termination from Medex, FSH sent its own notice of termination citing Medex's failure to cure the defaults contained in the Notice of Default. (Arbitration Claim, Doc. No. 19-3, ¶ 73).

FSH brought suit against Medex in state court alleging various claims of fraud and breach of contract.[3] In March 2017, after initial litigation in Chancery Court for Davidson County, Tennessee, FSH filed an arbitration demand with the American Arbitration Association. (*See* Doc. No. 19-2). The arbitration statement of claim alleged the following against Medex: (1) fraud in the inducement; (2) breach of the franchise agreement; (3) breach of the ADA; (4) violation of the Tennessee Consumer Protection Act; (5) slander; and (6) civil conspiracy. (*See* Statement of Claim, Doc. No. 27-2).

**B. The Arbitration Award**

The arbitrator ruled in favor of FSH on the claims of breach of the franchise agreement, breach of the ADA, fraud in the inducement, intentional misrepresentation, and violation of the Tennessee Consumer Protection Act and denied recovery on the claims for slander and civil conspiracy. (Award, Doc. No. 1-5).

---

[3] FHS's state-court complaint against Medex alleged the following claims: intentional misrepresentation/fraud/fraud in the inducement, negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, violation of the Tennessee Consumer Protection Act, misrepresentation by concealment; and sought the following relief: injunctive relief, rescission, declaratory relief, punitive damages, attorneys' fees, and pre- and post-judgment interest.

The arbitrator found that Medex materially breached the franchise agreement by failing to provide operational support as required by the agreement and by wrongfully terminating the franchise agreement without cause. The arbitrator also found that Medex breached and wrongfully repudiated the ADA.

The arbitrator found that Medex made material misrepresentations regarding the availability and quality of the operations support services to be provided under the contract and that Medex "knew they were false at the time they were made and did not intend to perform as represented." The arbitrator found that not only did Medex make knowingly false statements about the level and quality of operations support to induce FSH to enter into the franchise agreement, it continued to make false statements to induce FSH to continue to perform. The arbitrator stated:

> Prior to FSH signing the Agreement, [Medex] minimized or blamed any problems on the franchisees with whom FSH has spoken, or stated that they had been fixed when they had not, evidencing [Medex's] knowledge of the problems with its operations, failures to disclose the deficiencies in Medex's "outsourced operations support" and the continuation of those problems and deficiencies for months which is evidence of [Medex's] intention not to provide the products and services they represented to FSH at the time FSH signed the Agreement and continued to do so to induce FSH to perform and generate money for Medex.

(Doc. No. 1-5, ¶ 19). In sum, the arbitrator concluded that "Respondents breached and wrongfully repudiated and terminated the Agreement and ADA and defrauded Claimant by intentional and knowing conduct causing damages to claimant." (*Id*., ¶ 12).

The arbitrator awarded $120,461.00 for breach of the franchise agreement, and $452,065.00 for breach of the ADA. For fraud, misrepresentation, and violation of the

4

Tennessee Consumer Protection Act, the arbitrator awarded $613,702.00,[4] jointly and severally against Medex and Medex's owners, Kyle and Klein Calvert. The arbitrator held: "The awards for violation of the Tennessee Consumer Protection Act and for fraud and misrepresentation represent damages for the same conduct, and thus the awards are not cumulative." (Award, Doc. No. 1-5, ¶ 47). The arbitrator also awarded Plaintiff attorneys' fees, expenses, and costs of $244,718.00 and arbitration costs of $34,200.01, jointly and severally against Medex, Kyle Calvert, and Klein Calvert.

Davidson County Chancery Court confirmed the arbitration award and entered final judgment on February 18, 2019. (Doc. No. 19-3).

### C. The Professional Liability Policy

Westchester issued a Miscellaneous Professional Liability Policy to Medex (the "Policy") effective May 27, 2015 to May 27, 2016. (Doc. No. 1-1). The Policy includes the following relevant provisions:

> The **Company** will pay on behalf of the **Insured** all sums in excess of the Retention that the Insured shall become legally obligated to pay as **Damages** and **Claims Expenses** because of a **Claim** first made against the **Insured** and reported to the **Company** during the **Policy Period** by reason of a **Wrongful Act** committed on or subsequent to the **Retroactive Date** and before the end of the **Policy Period**.

"Wrongful Act" is defined as follows:

> **Wrongful Act** means any actual or alleged negligent act, error, omission, misstatement, misleading statement or **Personal Injury Offense**

---

[4] The arbitrator awarded $613,702.00 on for each claim, but because the awards represented damages for the same conduct, the awards were not cumulative. (*See* Arbitration Award, Doc. No. 1-5, ¶ 47).

committed by the **Insured** or by any other person or entity for whom the **Insured** is legally liable in the performance of or failure to perform **Professional Services**.[5]

The policy also contained a "Franchisors Endorsement" which amended the definition of "wrongful act" to add:

> **Wrongful Act** also means any actual or alleged plagiarism, piracy or misappropriation of ideas, neglect or breach of duty by the **Insured** in their capacity as such … in the performance or failure to perform **Professional Services** and which arises out of or involve one or more of the following: …
>
> 4. the failure to comply with any federal or state law or regulation or the terms of the Franchise Contract, affecting the renewal or termination of the relationship of the parties to a Franchise Contract;
>
> 5. the failure of the franchisor to provide services, training, advertising, or other support to the franchisees as required under the terms of a Franchise Contract or disclosed to franchisees in an offering circular or other distributed disclosure document;

The Policy provides for a number of exclusions. Westchester asserted the following as grounds for non-payment of the arbitration award related to the breach of contract claims:[6]

> The Company shall not be liable for Damages or Claims Expenses on account of any Claim:
>
> D. alleging, based upon, arising out of, or attributable to any dishonest, fraudulent, criminal or malicious act or omission, or any intentional or knowing violation of the law by an **Insured**, however, this exclusion shall not apply to **Claims Expenses** or the **Company's** duty

---

[5] Professional Services in this contract refers to services "[s]olely in the performance of services as a Franchisor, for others for a fee." (PageID# 235).

[6] FSH does not argue that the award of damages for the fraud, misrepresentation, and Tennessee Consumer Protection Act claims is payable under the insurance agreement. Accordingly, the policy exclusions related to those claims are not included here.

6

> to defend any such **Claim** unless and until there is an adverse admission by, finding of fact, or final adjudication against any **Insured** as to such conduct, as which time the Insured shall reimburse the **Company** for all **Claims Expenses** incurred;

(*Id*. at PageID# 16). The "Franchisors Endorsement" added the following exclusions:[7]

- alleging, based upon, arising out of or attributable to any assurance, promise, warrant or guarantee of potential sales, earnings, profitability or economic value;

- alleging, based upon, arising out of or attributable to … unfair business practices including, but not limited to, territorial infringement by either the franchisor or franchisee where such **Claim** arises out of or is alleged to arise out of, or be connected with, the commission of a fraudulent, dishonest, criminal, intentional or malicious act, error, or omission.

- alleging, based upon, arising out of or attributable to the recovery by a franchisee of actual sums paid to the **Insured** by a franchisee which constitute any initial fees, service fees, royalties, lease payments, or payments for goods and services;

(*Id*. at PageID# 30).

### E. Denial of Coverage

Westchester provided Medex a defense under a reservation of rights throughout the underlying litigation, but ultimately denied coverage for the arbitration award. Westchester cited exclusions for coverage of claims based upon various policy exclusions, including exclusions for coverage of claims based upon fraudulent conduct, conduct outside the policy

---

[7] These "additional exclusions" listed in the Franchisors Endorsement are not numbered the Policy. The Court has included only the additional exclusions relevant to this case.

coverage period, refund of franchise fees, unfair business practices, and guarantee of earnings.[8] (*See* Denial Letter, Doc. No. 1-7).

As detailed in the denial of coverage letter, Westchester concluded that the "award of damages, attorney's fees and arbitration costs to FSH was based on the Arbitrator findings [sic] that Medex fraudulently induced FSH into entering into the Franchise Agreement and Area Developer Agreement ("ADA") and awarded all damages to FSH on this basis." (*Id.*) Westchester determined the policy exclusion for fraudulent conduct was "triggered by the Arbitrator's final adjudication and a finding of fact that the Insured (and its principals) engaged in fraudulent and intentional conduct." (*Id.*)

Westchester determined that because "the false representations and misrepresentations forming the basis of the award were made prior to the February 27, 2015 executive of the Franchise Agreement and ADA," "all Wrongful Acts forming the basis of the award took place prior to the Retroactive Date." (*Id.*). Westchester also stated that the portion of the award "which represents a refund of the Franchise Fee and the Royalty Fee paid by FSH to the Insured" is not payable because "the Policy provides that the Company shall not be liable for Damages or Claims Expenses on account of any Claim alleging, based upon, or arising out of or attributable to the recovery by a franchisee of actual sums paid to the Insured by a franchisee which constitute any initial fees, service fees, royalties, lease payments, or payments for goods and services." (*Id.*)

---

[8] The letter denying coverage set out other limitations on coverage and bases for non-payment that are not relevant to coverage for the breach of contract awards, attorneys' fees, and arbitration costs.

FSH does not dispute that the award for the fraud, misrepresentation, and Tennessee Consumer Protection Act claims is not covered by the Policy, but argues Westchester wrongfully denied payment of the award for the breach of contract claims, attorneys' fees, and arbitration costs. FSH brings this case against Westchester asserting claims of breach of contract, bad faith refusal to pay pursuant to Tenn. Code Ann. § 56-7-105, and bad faith refusal to settle within the policy limits. (Compl., Doc. No. 1). Westchester filed the instant motion for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines

whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

### III. ANALYSIS

Under Tennessee law, "[t]he question of the extent of insurance coverage is a question of law involving the interpretation of contractual language." *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 441 (Tenn. 2012); *see also*, *Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co.*, 225 S.W.3d 482, 487 (Tenn. Ct. App. 2006) ("interpretation of an insurance policy is a question of law and not fact"). "Insurance contracts are 'subject to the same rules of construction as contracts generally,' and in the absence of fraud or mistake, the contractual terms 'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" *Clark*, 368 S.W.3d at 441 (quoting *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386-87 (Tenn. 2009)). "It is well settled that exceptions, exclusions and limitations in insurance policies must be construed against the insurance company and in favor of the insured." *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991). These clauses should not, however, "be so narrowly construed as to defeat their evidence purpose." *Capitol Indem. Corp. v. Braxton*, 24 F. App'x 434, 439 (6th Cir. 2001) (quoting *Tomlinson v. Bituminous Cas. Corp.*, No.96-5944, 1997 WL 397248, at * 1 (6th Cir. July 10, 1997) (applying Tennessee law)). The duty to indemnify is based on facts found by the trier of fact. *Clark v. Sputniks*, LLC, 368 S.W.3d 431, 439 (Tenn.

2012) (citing *Travelers Indem. Co. of Am. v. Moore & Assoc. Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007)).

**A. The Fraud Exclusion Does Not Bar Recovery on the Breach of Contract Claims**

Westchester argues the policy exclusion for any claim "based upon, arising out of, or attributable to any dishonest, fraudulent … act or omission" precludes coverage for all of the claims brought by FSH because the conduct giving rise to all of the claims was based upon or arising out of Medex's fraudulent actions. FSH contends the award for the breach of contract claim is properly payable under the Policy because the conduct underlying the breach of contract claims—the failure to provide services required by the contract and wrongful termination—was not in and of itself fraudulent or dishonest and is, therefore, not excluded. FSH argues that even if fraud was involved in some conduct underlying the breach of contract claim, the concurrent cause doctrine mandates coverage. Westchester argues that the concurrent cause doctrine is "irrelevant" because "*all* conduct related to *all* claims was *attributable* to fraud, dishonesty or intentional conduct." (Def. Reply, Doc. No. 23 at 7) (emphasis in original).

In Tennessee, the concurrent cause doctrine provides that there is insurance coverage in a situation "where a nonexcluded cause is a substantial factor in producing the damage or injury, even though an excluded cause may have contributed in some form to the ultimate result and, standing alone, would have properly invoked the exclusion contained in the policy." *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 887 (Tenn. 1991). "[A]n insurer should not be excused from its obligation under a [] policy unless it has been determined that the loss being complained of did not result in substantial part from a risk for which it provided coverage and collected a

premium … [C]overage cannot be defeated simply because the excluded risks might constitute an additional cause of the injury." *Id*. at 887-88.

In *Allstate,* the claimant, Watts, was assisting the homeowner, Crofton, and a third person to remove lug nuts from a truck parked in the homeowner's garage. Watts decided to use is welding torch to remove the lug nuts. Before igniting the torch, he asked Crofton if there were any flammable materials in the garage. Crofton answered in the negative. Sparks from the torch ignited a pan of flammable liquid under the truck. Crofton picked up the pan to put out the fire, but due to the heat, dropped and accidentally kicked the pan, splashing Watts with flaming liquid. Crofton's homeowner's insurance excluded claims for bodily injury arising out of maintenance on an automobile and denied the claim on that basis. *Id*.

The court held that the exclusion did not apply because Watts's injuries were substantially caused by other covered acts—the failure to warn and negligence in dropping and kicking the pan of flaming liquid. The court noted that failure to warn and negligence in dropping and kicking the burning liquid were insured risks, "and [were] the acts that comprised the basis of the lawsuit brought by Watts." *Id*. at 888. The *Allstate* court rejected the "but-for" theory of causation, reasoning:

> It is true that "arising out of" is an extremely broad phrase, so broad, in fact, that it is difficult to conceive of a rule that draws a justifiable line between coverage and no coverage at any reasonable point. Adopting Allstate's interpretation of "arising out of" to include *any* causal relationship would exclude coverage if, for example, Watts had gone into Crofton's home to retrieve a tool to aid in removing the lug nuts, and fell down a flight of stairs. Arguably, at least, maintaining the vehicle would have set in motion the chain of events that produced the eventual result. That is, but-for the difficulty encountered in maintaining the brakes on the truck, Watts would not have been inside of the home when he fell in order to obtain the tool. The problem with this approach is that cause and effect

12

> extend to near infinity. It is for this reason that we reject the "chain of events" theory of application which appears to hinge on a "but-for" theory of causation…"

*Id.* (emphasis in original).

The court further noted that the complaint was not predicated upon a cause of action or risk that was excluded by the policy. "We reject the contention that there can be no coverage when the chain of events leading to the ultimate harm is begun by an excluded risk, concluding instead that coverage cannot be defeated simply because excluded risks might constitute an additional cause of the injury." *Id.* at 888.

Following the adoption of the concurrent cause doctrine in *Allstate*, courts "look to the facts of the instant matter to determine if a nonexcluded cause was a 'substantial factor'" in causing the damage and also "to determine whether the excluded cause … was only merely connected with or only contributed in some small part" to the damage. *Capitol Indem. Corp. v. Braxton*, 24 F. App'x 434, 442 (6th Cir. 2001) (applying Tennessee law). *See also*, *Morgan v. Utica Mut. Ins. Co.*, 229 F.3d 1153 (6th Cir. 2000) ("coverage is available as long as the non-excluded cause of the loss is a 'substantial factor' in the occurrence—as opposed to sharing a 'mere connection' to the event").

The arbitrator found that Medex engaged in fraud prior to entering into the contract and that during the course of performance, Medex fraudulently misrepresented that it was going to fix the problems with operational support to induce FSH to continue performance under the contract. The conduct causing the breach, however, was not limited to Medex's misrepresentations about the quality of its services. The conduct that directly caused the breach

of contract and the resulting damages was Medex's failure to provide operational services as required by the contract.

The arbitrator described in detail Medex's non-performance under the contract:

> Medex did not take reasonable efforts to cure the defects and deficiencies and the breaches which had been communicated to the Respondents for months and more formally in FSH's letter of April 6, 2016. Although there were proposals and discussions with Respondents after said letter, the proposals had major problems to be worked out and have unreasonable and impractical provisions. Also, Medex compounded the problems FSH, and possibly others, was experiencing by denying FSH access to certain dispatchers, errors continuing, refusing to enter trips and declining 16 trips related to Methodist Hospital that FSH was not informed about, FSH customers could not get through to the Call Center, not informing FSH of trip requests which the Call Center had denied servicing, as well as FSH being shut off the system, turned back on the system, Medex changing operations that have been permitted, and Medex still failing to provide 24/7 service to FSH clients who needed night service and were generating revenue for Medex.

(Award, Doc. No. 1-5, ¶ 30). The claim for breach of the ADA agreement was based on termination of the agreement without cause. The arbitrator found that "Medex breached and wrongfully repudiated and terminated the Area Developer Agreement ("ADA"). Medex did not have a basis for terminating the ADA..." (Arbitration Award, Doc. No. 1-5, ¶ 13).

The arbitrator made no findings that the conduct giving rise to the breach of contract claim—the failure to provide the operational support required by the contract—was based on fraudulent conduct. Moreover, the arbitrator recognized that the damages for the breach of contract claims were based upon separate conduct from the damage attributable to the fraud, misrepresentation, and Tennessee Consumer Protection Act claims. The arbitrator found, and the state court affirmed, that the damages for the fraud related claims were based upon the same

underlying conduct and, therefore, not cumulative. Damages for the breach of contract claims, which were based on different underlying conduct, were awarded separately.

Westchester cites *Rice v. Liberty Surplus Ins. Corp.*, 113 F. App'x 116, 117 (6th Cir. 2004) as an example in which "identical fraud exclusions were triggered when a judgment finds that the insured conduct was based on fraud or dishonesty." The policy exclusion in *Rice* is similar to the one at issue in this case. The *Rice* policy excluded coverage for claims "based upon, arising from, or in any way related to any deliberately dishonest, malicious or fraudulent act or omission or any willful violation of law." *Id.* at 118. In *Rice*, however, the conduct underlying the damages award was itself conduct that violated the law. *Id.* at 123. Indeed, the court found the insured "has confessed that he tortiously interfered with a contract in violation of Tennessee law, that he was involved in a 'civil conspiracy to defraud' [the plaintiff] in violation of [a criminal statute]." The underlying conduct that was a breach of the contract, was itself a violation of the law. *Id.*

Contrary to Westchester's assertion, the arbitrator did not conclude that "*all* conduct of Medex was fraudulent, knowing, and intentional, and that *all* of Plaintiff's damages were caused by fraudulent, knowing and intentional conduct." As discussed above, the arbitrator found, and this Court agrees, that Medex breached the franchise agreement by failing to provide the required operational services and wrongfully terminating the franchise agreement and ADA. If Medex had engaged in no fraudulent conduct whatsoever, its non-performance under the contract would nevertheless have resulted in a material breach.

The Court finds that, under the concurrent cause doctrine, damages awarded for the breach of contract claim were caused in substantial part by the failure to provide operational services as required by the contract and the subsequent wrongful termination of the franchise agreement and the ADA. Therefore, the exclusion for claim "alleging, based upon, arising out of, or attributable to any dishonest, fraudulent, criminal or malicious act or omission" does not exclude coverage for damages award on the breach of contract claims.

**B. Damages for the Breach of Contract Claim Are Not Excluded**

Westchester contends that the damages awarded for the breach of the franchise agreement were "related to a refund of franchise fees and royalties," and, therefore, excluded from coverage based on the Policy exclusion for claims attributable to the recovery of actual sums paid, including franchise fees and royalties. FSH argues that the damages for breach of contract are not a "refund," but are merely the maximum damages allowed under the franchise agreement for a breach of contract.

The franchise agreement contains a "Limitation of Damages" clause that limits damages to actual damages "which shall not exceed the amounts paid to the franchisor as franchise and royalty fees." (*See* Franchise Agreement, Doc. No. 1-3). The Court finds that the plain meaning of the "Limitation of Damages" provision in the franchise agreement is precisely that – a limitation on damages. The provision limits damages to actual damages which shall not exceed the amounts paid to the franchisor as franchise and royalty fees, but does not convert a claim for damages for breach of contract into a claim "alleging, based upon, arising out of or attributable" to the recovery of fees paid to the franchisor. To decide otherwise would effectively preclude coverage for any damages on a breach of contract claim.

**C. Other Policy Exclusions Do Not Apply to the Damages Awarded for Breach of Contract**

Westchester raised following additional exclusions grounds for denial of coverage for the damages award for breach of the ADA (Def. Br., Doc. No. 15-1 at 16):

- Alleging, based upon, arising out of or attributable to any assurance, promise, warrant or guarantee of potential sales, earnings, profitability or economic value;

- Alleging, based upon, arising out of or attributable to … unfair business practices including, but not limited to, territorial infringement by either the franchisor or franchisee where such **Claim** arises out of or is alleged to arise out of, or be connected with, the commission of a fraudulent, dishonest, criminal, intentional or malicious act, error, or omission.

Westchester has not explained why these exclusions preclude coverage for the award related to the breach of the ADA and no such basis is apparent from the plain language of the exclusions.

Damages for breach of the ADA were awarded based on the finding that "Medex breached and wrongfully repudiated and terminated the Area Developer Agreement ("ADA"). Medex did not have a basis for terminating the ADA." (Award, Doc. No. 1-5, ¶ 13). The Court notes that the conduct underlying the breach of the ADA appears to be a covered "wrongful act" under the Policy, which specifically covers "the failure to comply with … the terms of the Franchise Contract, affecting the renewal or termination of the relationship of the parties to a Franchise Contract."

FSH withdrew the allegation that Medex had promised a certain amount of profit. (*Id.*, ¶ 5). Accordingly, this allegation did not form a basis for the award for breach of the ADA, and

the exclusion regarding promises "potential sales, earnings, profitability or economic value" does not apply.

The second exclusion, which pertains to "unfair business practices," does not appear to have any relevance to the breach of the ADA. However, Westchester does not specify what "unfair business practice" it claims formed the basis of the breach of the ADA or explain why this exclusion applies to the award. The Court will not attempt to divine the potential application of these exclusions to the facts of this case.

### D. Attorneys' Fees and Arbitration Costs

Finally, Westchester contends that the award of attorneys' fees is not covered by the policy because it is "also based upon, arising out of, or attributable to any dishonest, fraudulent … act or omission." (Def. Br., Doc. No. 15-1 at 17). The arbitrator awarded attorney's fees "pursuant to the AAA Rules, the Agreement, the ADA and Tenn. Code." Both the franchise agreement and the AAA Rules of Commercial Arbitration provide for the recovery of attorney's fees. (Franchise Agreement, Doc. No. 1-3, ¶¶ 22.4, 23.5) ("the prevailing party shall be entitled to reimbursement of its costs, including reasonable accounting and attorneys' fees"); American Arbitration Association Rules of Commercial Arbitration ("AAA Rules"), Rule 47(d). The AAA Rules also provide that the arbitrator may apportion arbitration fees and costs among the parties in "such amounts as the arbitrator determines is appropriate." AAA Rule 47(c).

As stated above, the award for breach of contract claims is not precluded by the various exclusions in the Policy. For the same reasons, the awards of attorney's fees or arbitration costs are not precluded.[9]

## IV. CONCLUSION

As stated above, Westchester has not shown the identified policy exclusions apply the awards of damages for the breach of contract claims, attorneys' fees, or arbitration costs. Accordingly, Westchester's Motion for Summary Judgment is **DENIED**. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[9] The Court notes that the AAA Rules do not tie the apportionment of arbitration costs to success on the merits. Rather the arbitrator "may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate." AAA Rule 47(c).

19