**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **FOR SENIOR HELP, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cv-00126** |
| | ) | **Judge Aleta A. Trauger** |
| **WESTCHESTER FIRE INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This case arises out of a dispute over insurance coverage. Plaintiff For Senior Help, LLC ("FSH") filed a Complaint asserting, among other claims, that defendant Westchester Fire Insurance Co. ("Westchester") wrongfully denied insurance coverage for an arbitration award in favor of FSH and against Westchester's insured, Medex Patient Transport, LLC ("Medex") in January 2018. After Westchester denied coverage, Medex was unable to pay the judgment against it and filed for bankruptcy protection. The Bankruptcy Court approved Medex's assignment of its breach of contract claim to FSH, which then filed this lawsuit. On June 23, 2020, Judge Campbell entered an Order (Doc. No. 36) granting the plaintiff's Motion for Partial Summary Judgment (Doc. No. 26) on FSH's breach of contract claim, finding that Westchester's denial of coverage constituted breach of the insurance contract. The court held that the arbitrator's award of damages for breach of contract claims, attorney's fees, and arbitration costs was covered by the Policy. (Doc. No. 36, at 2.)

In the same Order, Judge Campbell directed the parties to brief the issue of damages, and he set a schedule for doing so. (*Id.*) The parties have now submitted their respective Briefs

Regarding Damages. (*See* Doc. Nos. 42, 52.) Shortly thereafter, Judge Campbell recused himself from this case, and it was reassigned to the undersigned.

The first question posed by the parties' Briefs is what amount is available under the Policy for payment of the arbitration award. The second question is whether the plaintiffs should also recover prejudgment interest.

## I.    FUNDS REMAINING UNDER THE "ERODING POLICY"

The total amount awarded in favor of FSH in the underlying arbitration for breach of contract, attorney's fees, arbitration fees, and costs was $851,443.01. However, as FSH acknowledges, and as explained in the Declaration of Lora Camporeale, claim supervisor for Westchester in the underlying litigation, the Professional Liability Policy, Policy No. G27601856 001 ("Policy"), issued to Medex by Westchester, was an "eroding policy" with a maximum limit of liability in the amount of $1,000,000. (Doc. No. 52-3 ¶¶ 2–3.) The liability limit was "the maximum aggregate liability of [Westchester] for all Damages and Claims Expenses because of all Claims . . . first made and reported during the Policy Period." (*Id.* ¶ 4.) In other words, the limit did not pertain only to FSH's claim against Medex but to other claims by other claimants during the Policy coverage period as well.

FSH argues that the relevant date for making the determination of what amount is due to FSH is the amount remaining available for payment of claims "as of the date that Westchester denied coverage, which was in February 2018." (Doc. No. 42, at 2.) FSH states that it submitted to Westchester an interrogatory asking it to provide a list of all payments made under the Policy. Westchester, while objecting on various grounds, responded that, "as of the filing of the instant action," that is, as of February 2019, it had made payments of $565,947 under the Policy, thus reducing the funds available for payment to FSH to $434,053. (*See* Doc. No. 42-1, at 2–3.) The plaintiffs now argue that plaintiffs' counsel "[u]nfortunately" did not immediately realize the

significance of the date in the interrogatory answer and that "[t]he applicable date is not when the instant action was filed, but when coverage was denied." (Doc. No. 42, at 3.) The plaintiffs state that they have asked counsel for Westchester to confirm whether payments were made during the intervening time (February 2018 to February 2019). However, as of the date FSH was required to submit its Brief Regarding Damages, the information had not been provided. (*Id.*)

In its Brief, Westchester continues to deny that any coverage is owed under the Policy. Regardless, assuming that it does owe coverage, it notes that two other claims were made against Medex that arose during the Policy period. Westchester states that it provided a defense to Medex "in all three pieces of litigation, reserving all rights regarding the duty to indemnify." (Doc. No. 52, at 4.) Camporeale attests in her Declaration that Westchester paid out a total of $567,459 in claims expenses and damages on behalf of Medex over the life of these three claims. (Doc. No. 52-3 ¶ 6.)[1] As a result, Westchester states that $432,541—slightly less than the $434,053 identified in its interrogatory answer—remains available to be paid out under the Policy.

In response to FSH's argument that it is entitled to the amount that remained available as of the date Westchester denied coverage, Westchester argues that Tennessee law does not support that proposition. Instead, it argues, as assignee of Medex's claim, FSH steps into Medex's shoes and is entitled only to whatever proceeds Medex itself would have been able to recoup if it, instead of FSH, had filed suit and obtained a judgment in this case. (Doc. No. 52, at 5–6 ("If Medex had filed the instant breach of contract claim, it would only be entitled to the remainder of the insurance proceeds as of today, so that is the maximum amount recoverable by FSH standing in the shoes of Medex. As such, if the Court is going to award FSH damages, FSH is limited to the sum of

---

[1] Westchester and Camporeale did not submit any actual documentation in support of this assertion.

$432,541.00, which is what remains on the Policy today.").) It explains that Medex appealed the Chancery Court's Order confirming the arbitration award, and Westchester continued to make payments on behalf of Medex, not only in connection with that appeal,[2] "but also for the other two competing claims while the coverage dispute was being litigated." (*Id.*) Thus, "[r]egardless of which payments were being made for which of the three claims, all of these payments were made on behalf of and for the benefit of Medex." (*Id.*)

Under Tennessee law, an assignment of a claim under an insurance policy "is an assignment of only the policy proceeds themselves." *Helping Hands Improvement, LLC vs. Pa. Nat'l Mut. Ins. Co., LLC*, No. 1:20-cv-01006-STA-jay, 2020 WL 2065792, at *1 (W.D. Tenn. Apr. 29, 2020) (citing *Malone v. Harleysville Mut. Ins. Co.*, No. E2000-01308-COA-R3-CV 2001 WL 245133, at *5 (Tenn. Ct. App. 2001)). More generally, a valid assignment "does not confer upon the assignee any greater right or interest than that possessed by the assignor, as the assignee can stand in no better position than the assignor. In other words, the assignee takes all of the rights of the assignor, no greater and no less." 6A C.J.S. Assignments § 88 (Dec. 2020 Update) (footnoted citations omitted); *see also Zaharias v. Vassis*, 789 S.W.2d 906, 910 (Tenn. Ct. App. 1989) (noting that, in the event of an assignment of the right to recover insurance proceeds, "the claimant's right to recover is based upon the insured's right and can rise no higher." (citing 6A C.J.S. *Assignments* § 88 (1975)).

In this case, Medex assigned its right to recover insurance proceeds to FSH, but FSH's right to recovery is no greater than Medex's would have been if it had not assigned the claim. All payments made by Westchester under the policy were paid for the benefit of Medex, so it

---

[2] There is no evidence in the record that Medex pursued an appeal to the Tennessee Court of Appeals.

essentially makes no difference *to Medex* in what order the payments were made. Thus, although the court is troubled by the fact that Westchester has submitted no documentation to substantiate Camporeale's testimony regarding the funds paid out to date under the Policy, Westchester is correct that FSH's recovery is limited to the maximum aggregate policy limit minus those funds already paid out under the Policy. In the absence of countervailing evidence, the court accepts that this figure is $432,541.

## II.    PREJUDGMENT INTEREST

In diversity cases in the Sixth Circuit, "state law governs awards of prejudgment interest." *Estate of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005) (quoting *F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000)). Under Tennessee law, "[p]rejudgment interest . . . may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum . . . ." Tenn. Code Ann. § 47-14-123. Tennessee courts have construed this statute to mean that "[a]n award of prejudgment interest is within the sound discretion of the trial court" and will not be disturbed on appeal, "where the evidence supports the trial court's decision." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

Although the Tennessee courts have held that, in some circumstances, an award of prejudgment interest against an insurance company in excess of the policy limits is barred by the terms of the insurance policy itself, the reasoning applied in those cases is not applicable here. *See, e.g.*, *Malone v. Maddox*, No. E2002-01403-COA-R3CV, 2003 WL 465668, at *6 (Tenn. Ct. App. Feb. 25, 2003) (affirming the decision not to award prejudgment interest in that case, as it would exceed the policy limits, but distinguishing cases that, like this one, involve direct actions against insurance companies for breach of contract). In any event, the defendant does not argue that Tennessee law prohibits an award of prejudgment interest in excess of the policy limit in this case.

The Tennessee Supreme Court has provided some signposts to guide the trial courts' exercise of discretion. The "foremost" consideration governing the decision of whether to award prejudgment interest is equity. "Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case." *Id.* Two other criteria are relevant: (1) whether "the amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds"; and (2) whether "the existence of the obligation itself is not disputed on reasonable grounds." *Id.* at 927 (citations omitted).

These criteria are not strictly construed, however. As the court noted in *Myint*, strict construction "could prohibit the recovery of prejudgment interest in the vast majority of cases." *Id.* Indeed, rare is the case involving a claim that can "truly be considered an obligation of certain and indisputable amount," and, moreover, "defendants usually can articulate at least one good reason for disputing the existence of the obligation." *Id.* The Tennessee Supreme Court concluded that, "if the existence or amount of an obligation is certain, this fact will help support an award of prejudgment interest as a matter of equity" but that "[t]he converse . . . is not necessarily true." *Id.* at 928. Instead, an award of prejudgment interest is proper if the decision is otherwise equitable, and "[t]he certainty of the plaintiff's claim is but one of many nondispositive facts to consider when deciding whether prejudgment interest is, as a matter of law, equitable under the circumstances." *Id.* Thus, even in *Myint*, the Tennessee Supreme Court readily recognized that the defendant insurance company had had a reasonable basis for denying the plaintiffs' claim but nonetheless affirmed the award of prejudgment interest, finding it equitable under all the circumstances. *Id.* at 929.

In this case, the "amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds." *Id.* at 927. The arbitrator issued

an award granting a specific amount of damages attributable to breach of contract, attorney's fees, and expenses. That award was confirmed by the Davidson County Chancery Court. In addition, the amount available to pay that award remaining from the eroding Policy limit was readily "ascertainable by computation." *Id.* at 928. This factor certainly weighs in favor of an award of prejudgment interest.

Westchester argues that prejudgment interest should not be awarded because it "asserted a coverage defense in good faith." (Doc. No. 52, at 7.) It also contends that its defenses were reasonable, because the precise "concurrent cause" doctrine upon which the plaintiff and the court relied in granting summary judgment for the plaintiff was, Westchester insists, "a matter of first impression for any Tennessee court." (*Id.*) Although the Tennessee case upon which Judge Campbell relied in applying the concurrent clause doctrine dates back to 1991,[3] Westchester insists that "there are no published or unpublished decisions applying or analyzing the concurrent cause doctrine in a situation involving a mix of fraud and contract claims in which all of the conduct that supported both claims was intentional and fraudulent." (Doc. No. 52, at 7.)

This court is not persuaded by that argument, and neither was Judge Campbell. As he stated in the Memorandum addressing Westchester's Motion for Partial Summary Judgment:

> Contrary to Westchester's assertion, the arbitrator did not conclude that "all conduct of Medex was fraudulent, knowing, and intentional, and that all of Plaintiff's damages were caused by fraudulent, knowing and intentional conduct." As discussed above, the arbitrator found, and this Court agrees, that Medex breached the franchise agreement by failing to provide the required operational services and wrongfully terminating the franchise agreement and ADA. If Medex had engaged in no fraudulent conduct whatsoever, its non-performance under the contract would nevertheless have resulted in a material breach.

---

[3] *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 887 (Tenn. 1991).

(Doc. No. 30, at 15.) Westchester's articulated grounds for denying coverage were arguably reasonable. At the same time, the denial was not supported either by Tennessee law or the structure of the arbitrator's award, which specifically distinguished between those damages attributable to fraudulent conduct by Medex, which were not covered by the Policy, and those that were attributable to breach of contract, which were. Thus, the fact that Medex had a "reasonable" ground for disputing payment does not weigh against an award of prejudgment interest in this case. In addition, Medex, and therefore FSH, was deprived of the benefit of the use of the funds from the date Westchester denied coverage until the present, while Westchester has had full use of the funds during that time frame. *See Myint*, 970 S.W.2d at 927 ("[T]he purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing.").

The court finds, under all of the circumstances, that prejudgment interest is warranted. The plaintiff requests interest at the rate of ten percent per annum, the statutory maximum. The defendant requests that no prejudgment interest be awarded at all. In light of historically low interest rates over the past decade combined with high yields on investments, the court will award simple prejudgment interest at the rate of five percent per annum.

One final issue bears attention, though neither party mentions it. Prejudgment interest is generally awarded from the date an insurance company denies coverage. *See Myint*, 970 S.W.2d at 929. In this case, however, it appears that Westchester denied coverage even before the Chancery Court entered judgment on the arbitrator's award of damages against Medex, Westchester's insured. Because there was no liability for payment on behalf of Medex until the judgment against Medex became final, the court finds that prejudgment interest should run from the date the

Chancery Court's judgment became final rather than the date on which Westchester denied coverage.

## III.  CONCLUSION AND ORDER

For the reasons set forth herein, the court hereby **AWARDS** damages for breach of contract in the amount of **$432,541**, plus prejudgment interest to be paid in excess of the Policy limit, from the date on which the Chancery Court judgment against Medex became final, through the date on which payment is made or the judgment in this case becomes final, whichever occurs earlier.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge